# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEVONNA EASTER,<br><br>      Plaintiff,<br><br>v.<br><br>THE DEPARTMENT OF THE ARMY, a Government entity, UNITED STATES OF AMERICA,<br><br>      Defendant. | Case No. CIV-09-298-RAW |

## ORDER & OPINION

Before the court is Defendant's motion for summary judgment [Docket No. 28]. Plaintiff filed her Complaint on August 4, 2009 requesting damages based on her claim of negligence against the Defendant under the Federal Torts Claims for failure to erect a functional gate and/or maintain in working condition the gate that fell and injured her. Defendant argues in its motion for summary judgment that it is not liable to Plaintiff because Defendant was her "statutory" or "principal" employer and because Plaintiff has already received all the relief to which she is entitled under the Oklahoma worker's compensation law.

### Background Facts

On September 7, 2008, Plaintiff was injured when a gate at Post 7, the truck gate, at the McAlester Army Ammunition Plant (hereinafter "MCAAP") fell into her. At the time of Plaintiff's injury, she worked as an employee of AmTex Security Inc. (hereinafter "AmTex"). The U.S. Army Contracting Command contracted with AmTex to provide security guards at the MCAAP. On the day of her injury, Plaintiff was assigned to work as a guard at a gate in the

MCAAP.

MCAAP is a U.S. Army facility. MCAAP's mission includes manufacturing and storing ammunition, rockets and bombs. A Department of Defense Directive and Army Regulation 190-11 mandate the security protocols at installations such as MCAAP. Army Regulation 190-11 evidences the Army's responsibility to ensure necessary security measures are taken to "safeguard" munitions at all times. Army Regulation 190-11 was released on November 15, 2006 and was in effect through the date of Plaintiff's injury.

Army Regulation 109-11 allows the MCAAP commander to compose security patrols with "military personnel; civilian security personnel, including contract personnel; U.S. Marshall Service; or State, local, or campus police." Plaintiff contends and provides some evidence that gate and perimeter security was provided exclusively by contractors, namely AmTex, at the time of her injury. She does not contest that security patrols may have been performed by military personnel, but states that security patrols are not necessarily perimeter security.

The U.S. Army soldiers who performed the security mission at MCAAP included active duty and inactive duty reserve soldiers. Plaintiff provides evidence that U.S. Army soldiers or Army civilian employees never took control of her gate. In Plaintiff's deposition, however, she states that when she was first hired, Army soldiers and/or Army civilian employees would be placed with her at the gate "just to give them something to do." Plaintiff's Deposition, p. 80.

In May of 2006, the Army Contracting Command solicited a bid for security guard services to be performed at MCAAP from November 1, 2006 to September 30, 2007. The Army Contracting Command's solicitation required the contractor to ensure its employees completed a training program that conformed to the standards mandated by Army Regulation 190-56.

Plaintiff argues that security guards were required to do more physical training and testing than required in the regulations. She directs the court to her affidavit and the affidavit of Jeanette Olandese, but these affidavits do not provide any factual support for her argument.

The Army Contrating Command's solicitation required the contractor to ensure its employees met the firearms qualifications for sidearm weapons that were mandated by the standards set forth in the U.S. Army Military Police Firearms Qualifications Course. The contract between the Army and AmTex mandated that AmTex provide a formal training program to the security guards to be conducted by a qualified instructor. The contract defined a qualified instructor "as an employee who has attended a formalized basic instructors course through the U.S. Government, Civil Service, or military program, or has been certified as an instructor by the Oklahoma Council on Law Enforcement Education and Training (hereinafter "CLEET"). The contract does not require AmTex's employees to be CLEET certified.

The AmTex guards perform tasks such as checking and validating security access media, authenticating access into restricted areas and other areas as determined by the Commanding Officer, and ensuring arms, ammunition and explosives storage areas are secured. The AmTex guards are qualified to perform all of the security force mission requirements at MCAAP.

The Army Contracting Command's solicitation required the contractor to comply with state workers' compensation statutes. AmTex submitted the successful bid and on September 29, 2006, executed a contract to provide security services at MCAAP, accepting all of the provisions of the solicitation.

After her injury, Plaintiff filed an Oklahoma Workers' Compensation claim and settled the claim for $35,000.00 on September 23, 2008. Plaintiff signed an administrative claim for

later submission to the U.S. Army Claims Service (hereinafter "USARCS") for $975,000.00 on November 18, 2008. The Fort Sill Claims Office, authorized to accept claims on behalf of USARCS, received Plaintiff's claim on December 4, 2008. The USARCS denied her claim by a letter dated March 5, 2009. Plaintiff then filed this action on August 4, 2009.

**Analysis**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of her complaint. Id.

**"Statutory" or "Principal" Employer**[1]

Under the Federal Tort Claims Act, the United States is only liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In Oklahoma, workers' compensation is the exclusive remedy to an injured party when the defendant is her statutory employer. 85 OKLA. STAT. § 12.

---

[1]The court will uses these terms interchangeably for purposes of this Order and Opinion.

An employer is a statutory or principal employer to a contractor if the contractor is engaged in work that is a "necessary and integral part of the employer's principal business." W.P. Atkinson Enterprises, Inc. v. District Court of Oklahoma County, 516 P.2d 541, 544 (Okla. 1973). To determine whether a contractor is engaged in work that is "necessary and integral" to the employer's principal business, Oklahoma courts apply a three-prong analysis. Bradley v. Clark, 804 P.2d 425, 427 (Okla. 1990).[2]

Under this test, the court "must first inquire whether the contract work is specialized or nonspecialized." Izard v. United States, 946 F.2d 1492, 1494 (10th Cir. 1991) (quoting Bradley, 804 P.2d at 428 n. 10). "If the contract work is specialized *per se*, it is not, as a matter of law, part of the principal's trade, business or occupation." Id. Second, if the contract work is not specialized *per se*, the court is to "compare the contract work with the principal's trade, business or occupation to determine whether the contract work could be considered a part thereof." Id. "Finally, the court must inquire whether the principal was actually engaged at the time of the injury in the trade, business, or occupation of the hired contractor." Id.

**First Prong – Specialized Per Se**

Work is not specialized *per se* when a principals' own employees are capable of

---

[2]Plaintiff argues that Bradley did not overturn the former analysis utilized by Oklahoma courts as set out in Murphy v. Chickasha Mobile Homes, Inc., 611 P.2d 243 (Okla. 1980). Plaintiff relies on Carlson v. United States, 248 F.Supp.2d 1040 (N.D. Okla. 2003) because that opinion points out that the Oklahoma Supreme Court did not explicitly overrule Murphy when it adopted the new test in Bradley. Contrary to Plaintiff's argument, however, the Northern District of Oklahoma stated in that opinion: "If *Bradley* is the 'sharp tool' that the court adopted to implement and clarify *Murphy*, then it does not follow that the parties would have to satisfy both tests. Therefore, the Court will only examine the *Bradley* test . . . ." Id. at 1045. This court will do the same.

5

performing the contract work. Id. at 1496. As noted above, Army Regulation 190-11 makes the Army responsible for ensuring that necessary security measures are taken to "safeguard" munitions at all times. This regulation was in place at the time of Plaintiff's injury. It also allows the MCAAP commander to compose security patrols with "military personnel; civilian security personnel, including contract personnel; U.S. Marshall Service; or State, local, or campus police."

Plaintiff does not contest that Army employees performed security patrols, but argues that perimeter security was performed exclusively by AmTex. While AmTex had the contract to provide security guards for the gates at the MCAAP, Plaintiff admits that sometimes Army employees were posted at the gate with her. Her belief that these Army employees were posted at the gate with her only "to give them something to do" is both speculative and of little relevance. Army personnel performed security functions, including being posted at the gates from time to time.

Plaintiff wishes to divide the Army's security mission into individual tasks. Plaintiff argues that Army personnel were not customarily at her gate. By Plaintiff's analysis, any individual task routinely performed by a contractor for a period of time would not meet the first prong of the Bradley analysis no matter whether it fell into a broad spectrum of activities, such as "security" that were routinely handled by the defendant's employees as well. The Bradley analysis "focuses on the contract and the principal, rather than the individual worker." Carlson, 248 F.Supp.2d at 1045.

Additionally, the contract between the Army and AmTex clearly did not require AmTex's contractors to have skills beyond those required of Army personnel. Contrary to Plaintiff's

argument that the contract required AmTex's contractors to be CLEET certified, it simply required them to have a formal training program given by a qualified instructor. The contract then defined a qualified instructor as an employee who has attended a formalized basic instructors course through the U.S. Government, Civil Service, or military program, or has been certified as an instructor by CLEET.

Defendant has met the first prong of the analysis in <u>Bradley</u>. Army personnel customarily perform security functions. The work performed by AmTex contractors was not specialized *per se*. The court, therefore, moves on to the second prong of the <u>Bradley</u> analysis.

**Second Prong – Part of Principals' Business**

Because the work Plaintiff was performing was not specialized *per se*, the court compares it with the Army's business to determine whether the work could be considered a part of the Army's business. The court determines that the overall security mission is a part of the Army's business. The Army is routinely and customarily in the business of ensuring security for arms, ammunition, and explosives as directed by Army Regulation 190-11 and the Department of Defense directive that the Army is responsible for ensuring necessary security measures are taken to safeguard those munitions at all times.

Additionally, while AmTex provides the majority of the perimeter security at the MCAAP, "the proper focus is on the *agency or department* of the United States which contracted for the work." <u>Izard</u>, 946 F.2d at 1495. The court is "not required to splinter [the Army's] activities into discrete geographical regions." <u>Id</u>. at 1496. It would also follow that the court is not required to splinter the activities at the MCAAP into specific tasks under the security

heading.  The Army is in the business of securing muntions.  Defendant meets the second prong of the Bradley test.

**Third Prong – Principal Engaged at time of Injury in the Business of the Contractor**

Finally, the court must decide whether the Army was actually engaged in the security mission at the time of Plaintiff's injury.  Defendant argues, the Army has never ceased in its mission of ensuring security at munitions plants.  The court believes Defendant is correct, but more importantly, the Army was engaged in its mission of ensuring security at munitions plants at the time of Plaintiff's injury.

Army Regulation 190-11 was in effect at the time of Plaintiff's injury.  Army personnel perform the security mission at the MCAAP, including sometimes even being posted at the gate with Plaintiff.  Moreover, as Defendant argues, the Army as a whole was in the business of securing munitions at the time of Plaintiff's injury.  Defendant was a "statutory" or "principal" employer.

**Workers' Compensation**

Plaintiff admits that she filed for and settled a workers' compensation claim.  Because Defendant was a "statutory" or "principal" employer, workers' compensation is Plaintiff's exclusive remedy under 85 OKLA. STAT. § 12.

**Conclusion**

Even applying the Bradley test narrowly, as it must, this court finds that the Defendant

has satisfied all factors of that analysis and thus was Plaintiff's "statutory" or "principal" employer at the time of her injury. Plaintiff acknowledges that she has already received a workers' compensation settlement which is her exclusive remedy under 85 OKLA. STAT. § 12. Accordingly, the motion for summary judgment [Docket No. 28] is hereby GRANTED. The action against Defendant is DISMISSED.

IT IS SO ORDERED this 18th day of February 2010.

**Dated this 18th Day of February 2010.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma

j4h4i0